UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUETTS

Civil Action No. 16-12036

|   |   |
|---|---|
| DJAMEL OUADANI, on behalf of himself and all others similarly situated, | ) ) ) ) |
| Plaintiff | ) |
| v. | ) ) |
| DYNAMEX OPERATIONS EAST, LLC, | ) ) |
| Defendant | ) ) |

**CLASS ACTION COMPLAINT & JURY DEMAND**

**Introduction**

1. This is an action for misclassification and related claims brought by plaintiff Djamel Ouadani on behalf of himself and all others similarly situated. Plaintiff worked for Defendant as a driver, delivering products ordered though Google Express. He brings class claims for violations of the Massachusetts Misclassification Statute, M.G.L. c. 149, § 148B, the Massachusetts Payment of Wages Law, M.G.L. c. 149, § 148, and the Massachusetts Minimum Wage Law, M.G.L. c. 151, § 1. He also brings a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, based on Defendant's failure to pay at least the federal minimum wage. Finally, Plaintiff brings an individual claim for retaliation. Plaintiff seeks resulting treble or liquidated damages, interest, costs, and attorneys' fees.

**Parties**

2. Plaintiff Djamel Ouadani is an adult resident of Cambridge, Massachusetts. He began working for Defendant as a driver in March 2016. He worked until August 2016, when he

was terminated after complaining about the failure to classify and pay him properly as an employee.

3. Defendant Dynamex Operations East, LLC ("Dynamex") is a foreign limited liability company with a regular place of business in Wilmington, Massachusetts. On information and belief, Dynamex is the successor-in-interest to other entities that previously operated in Massachusetts, including Dynamex Operations East, Inc.; Dynamex Fleet Services LLC; or Dynamex Fleet Services, Inc.

**Facts**

4. Plaintiff obtained his position by applying to an advertisement placed by Dynamex on Craigslist. An example of the type of advertisement placed by Dynamex is attached as Exhibit 1.

5. Plaintiff contacted Dynamex and was invited to a meeting at the offices of Dynamex in Wilmington, Massachusetts. At the meeting, which took place on or about March 24, 2016, he was, among other things, interviewed by Dynamex employees (including Operations Supervisor Christopher Terlizzi and Purchased Transportation Supervisor Steven Metherall), asked to complete various Dynamex forms (including a form in which he indicated his available days and hours), given a Dynamex shirt (for which he had to pay), had his photograph taken for a Dynamex identification badge, told that he needed to pass a drug test, and given information about the services that Dynamex provided for Google Express. He was told that he would be paid $18 per hour, or $72 for a standard four-hour shift. He also was given the names and telephone numbers of three Dynamex-affiliated "vendors" and instructed that he would have to associate with one of the vendors.

6. Plaintiff associated with the Dynamex-affiliated vendor Selwyn and Birtha Shipping LLC ("SBC"). On information and belief, SBC is owned and managed by Edward Alwis, who also works as a delivery driver for Dynamex. Plaintiff never interviewed with or met Mr. Alwis. On information and belief, Dynamex's requirement that Plaintiff associate with a vendor was part of an improper attempt to avoid its obligations as an employer. Plaintiff was not classified as an employee by Dynamex or SBC.

7. Plaintiff passed his drug test, spent two days observing another delivery driver, received his Dynamex identification badge (Exhibit 2), received a cell phone and scanner that were set up with Google Express's software, and began performing services for Dynamex. When performing services for Dynamex, Plaintiff was required to wear the Dynamex-issued shirt that said "Dynamex" on it (Exhibit 3) and his Dynamex identification badge.

8. Plaintiff also had a Dynamex-issued email address (djamel.ouadani@dynamex.courier-ops.com) at which he received communications and directions from Dynamex managers. Among other things, Mr. Ouadani received scheduling directions from Dynamex at that address (Exhibit 4).

9. Throughout the time he worked for Dynamex, Plaintiff received supervision and direction from Dynamex managers, including Mr. Terlizzi and Mr. Metherall. For example:

> a. Dynamex instructed Plaintiff and other drivers that they were not supposed to log in until they are at their "staging area" (Exhibit 5).
>
> b. Dynamex instructed Plaintiff and other drivers that they were required to complete online training courses (without compensation) (Exhibit 6).
>
> c. Dynamex instructed Plaintiff and other drivers that they could not pick up extra parcels when at a stop, even if it was efficient to do so (Exhibit 7).

3

      d. Dynamex exercised control over the schedules of Plaintiff and other drivers (Exhibit 8).

      e. Dynamex exercised control over the appearance and demeanor of Plaintiff and other drivers, as well as the appearance of their vehicles (Exhibit 9).

10. Dynamex paid SBC, and SBC issued payments to Plaintiff and other drivers, less a deduction of 17.5 percent of his pay. On information and belief, none of that 17.5 percent deduction benefitted SBC; instead, the money was used to pay for workers' compensation, other insurance, and payroll expenses (Exhibit 10).

11. Dynamex made further deductions from the pay of Plaintiff and other drivers for insurance, for their cell phones and scanners, and for "technology charges" (Exhibits 11, 12). Dynamex made other unauthorized deductions as well. For example, Dynamex made deductions if drivers requested to change or could not work any of their assigned shifts or if they logged in late (Exhibit 13). Similarly, Dynamex made deductions for products that were allegedly damaged or stolen, without regard to whether Plaintiff or other drivers were at fault. For example, for allegedly missing deliveries from May 9, 2016, he was charged a total of $94.17, including "restocking fees" of $60 (Exhibit 14).

12. With respect to the delivery services that Plaintiff provided for Dynamex, he used his own car and paid for his own gas, without any reimbursement. As is typical for other drivers, Plaintiff commonly drove 50-100 miles per shift (his deliveries took him to various parts of the Greater Boston area, including without limitation Chelsea, Everett, Malden, Somerville, Cambridge, Arlington, Watertown, Brighton, Boston, Dorchester, Roslindale, Jamaica Plain, Newton, etc.) resulting in a daily vehicle cost of about $27-54, based on the 2016 IRS mileage rate of $0.54 per mile. As a result, for a four-hour shift for which he was paid a gross amount of

$72, Plaintiff's net pay after the overall 17.5% deduction ($12.60) and his mileage costs ($27-54) would range from a high of $32.40 to a low of $5.40, equating to hourly rates of $8.10 to $1.35, before the deductions for his cell phone, his scanner, insurance, damaged or stolen deliveries, or otherwise. As a result, Plaintiff regularly received less than the federal minimum wage.

13. Dynamex provided Plaintiff his assigned shifts for the upcoming week, subject to change at Dynamex's direction. At the beginning of an assigned shift, Plaintiff was required to log in to the Google Express delivery system on his phone. He was not able to log in prior to his assigned shift time. Once he logged in, he was then given specific instructions about where he needed to go, in what order, and within what time frames. Likewise, he was required to follow specific instructions about how deliveries were to be picked up (Exhibit 15) or made (e.g., where the delivery was to be left, whether the delivery needed a signature, etc.). Plaintiff was not able to change the order of his assigned work, even if the specified assignments required him to makes deliveries in a manner that was inefficient or burdensome. If the deliveries assigned to Plaintiff required him to work beyond the end of his assigned shift, as commonly happened, he was expected to complete his work without additional compensation, thereby reducing his hourly pay even further. When Plaintiff completed his last delivery of the day, he was required to log out.

14. As a result of Dynamex's policies and practices with respect to Plaintiff and other drivers, Plaintiff and other drivers were subject to control and direction by Dynamex, either under contract or in fact.

15. Given the nature in which Plaintiff and other drivers are directed and paid, they have no practical opportunity to control or realize any profits.

16. On information and belief, Plaintiff and other drivers are hired and trained with the expectation of long-term engagement by Dynamex.

17. Plaintiff, like similarly situated drivers, did not have an independently established trade, occupation, profession, or business to provide services of the same nature he provided to Dynamex.

18. Plaintiff and other drivers are not expected or required to have any special skills or abilities, other than the ability to drive, transport packages, and use a simple software system, as directed by Dynamex.

19. The services performed by Plaintiff and other drivers are integral to and within the usual course of the business of Dynamex.

20. Plaintiff and similarly situated employees are Dynamex's employees, under a direct or joint employment theory, pursuant to Mass. Gen. Laws ch. 149, § 148B, the FLSA, and common law.

21. On or about August 22, 2016, Plaintiff complained that he did not have the independence of a supposed contractor, noting that if he continued to be controlled like an employee he would need to be paid as an employee. That same day, or early the next day, he was permanently taken off the driver schedule and not given any more work, resulting in his termination.

22. Pursuant to the state law requirements set forth in M.G.L. c. 149, § 150, Plaintiff filed his state law statutory claims with the Attorney General and has received a right to sue letter.

23. Pursuant to 29 U.S.C. § 216(b), Plaintiff consents to sue as a plaintiff under the FLSA. His consent to sue form is attached to this Complaint as Exhibit 16.

## Class Action Allegations

24. Pursuant to M.G.L. c. 149, § 150, M.G.L. c. 151, § 1B, and Fed. R. Civ. P. 23, Plaintiff brings this action on behalf of himself and all other similarly situated delivery drivers who have worked for Dynamex and were misclassified as independent contractors within the relevant limitations periods.

25. Joinder is impracticable in this case due to the size and composition of the class, and nature of the claims and relief sought, the remedial purpose of the underlying claims, and because individual joinder would be inefficient, uneconomical, and could result in the deprivation of wage rights to aggrieved employees.

26. There are issues of law and fact common to all class members, because Dynamex's practices similarly affected all class members. The common questions of law and fact predominate over any questions affecting individual class members. The predominant questions of law or fact are clear, precise, well-defined, and applicable to Plaintiff as well as every absent member of the proposed class.

27. The claims of Plaintiff are typical of the claims of all members of the class, because all members of the class were subject to the same unlawful practices and suffered similar harms.

28. Plaintiff will fairly and adequately represent the interests of the class because he does not have a conflict of interest with the class members. The undersigned counsel will fairly and adequately represent the class members' interests because they have substantial experience in this field.

29. A class action is superior in this case for several reasons including, but not limited to, the following: the case challenges Dynamex's uniform employment classification and wage

payment practices; many workers may be reluctant to bring claims individually for fear of retaliation; some class members may not have the motivation or resources to bring their claims individually; and it would be an inefficient use of scarce judicial resources to require each employee affected by the practices challenged herein to bring his or her own individual claim.

## Collective Action Allegations

30. Pursuant to 29 U.S.C. § 216(b), Plaintiff brings the minimum wage claims under the FLSA on behalf of all similarly situated individuals who may choose to "opt in" to this action pursuant to the FLSA, 29 U.S.C. § 216(b).

31. This claim meets the requirements for collective action certification under the FLSA.

32. All potential opt-in plaintiffs are similarly situated as to this claim, as Defendant's policy and practice of not paying full minimum wage, as set forth above, was applicable to all misclassified delivery drivers and resulted in the alleged violation of the FLSA.

## Count I (Class Claim)
## Misclassification, M.G.L. c. 149, § 148B

As described above, Defendant has misclassified Plaintiff and the class members as independent contractors in violation of M.G.L. c. 149, § 148B. For this violation, Plaintiff and the class members are entitled to recover the wages and benefits they would have received as employees, including reimbursement for any business-related expenses they were required to bear as a result of their misclassification as independent contractors. This claim is brought pursuant to M.G.L. c. 149, § 150.

**Count II (Class Claim)**
**Massachusetts Wage Act, M.G.L. c. 149, § 148**

As described above, Plaintiff and the class members have not received the wages and benefits that they would have received had Defendant properly classified them as employees, either under M.G.L. c. 149, § 148B or under common law. For example, they have been required to bear Defendant's business-related expenses, including transportation expenses, and have been subject to unauthorized deductions, in violation of M.G.L. c. 149, § 148. This claim is brought pursuant to M.G.L. c. 149, § 150.

**Count III (Class Claim)**
**Massachusetts Minimum Wage Law, M.G.L. c. 151, § 1A**

As described above, Plaintiff and the class members have not received the required minimum wage required by M.G.L. c. 151, § 1, had Defendant properly classified them as employees, either under M.G.L. c. 149, § 148B or common law. This claim is brought pursuant to M.G.L. c. 151, § 20.

**Count IV (Class Claim)**
**Unjust Enrichment**

As described above, Defendant has been unjustly enriched to the detriment of drivers classified as independent contractors, including Plaintiff and class members. Plaintiff and class members are entitled to recovery on this claim.

**Count V (Individual Claim)**
**Retaliation**

As described above, Defendant terminated Plaintiff in retaliation for his protected conduct under the Massachusetts wage laws, in violation of M.G.L. c. 149, § 148A. This claim is brought pursuant to M.G.L. c. 149, § 150.

### Count VI (Collective Action)
### FLSA – Minimum Wage

As described above, Defendant failed to pay Plaintiff and similarly situated drivers the minimum wage required under the Fair Labor Standards Act. This claim is brought pursuant to 29 U.S.C. § 216(b).

### **JURY DEMAND**

The plaintiff requests a trial by jury on all claims.

**WHEREFORE,** the plaintiff seeks judgment against Defendant as follows:

1.	With respect to the class claims under Massachusetts law, certification of this case as a class action, or recognition that this case is properly brought on behalf of all similarly situated employees, pursuant to Fed. R. Civ. P. 23, M.G.L. c. 149, § 150, and M.G.L. c. 151, § 20. With respect to all claims under Massachusetts law, Plaintiff seeks certification of a class that includes all persons who performed deliveries for Defendant's Google Express operations in Massachusetts during the relevant limitations period.

2.	An order conditionally certifying a class of similarly situated individuals under the FLSA, and directing the issuance of notice informing affected individuals of their right opt in to this action. With respect to the claim under the FLSA, Plaintiff seeks certification of a class that includes all persons who performed deliveries for Defendant's Google Express operations during the relevant limitations period.

3.	A finding that Defendant's violations under the FLSA were willful and knowing, and therefore subject to a three-year statute of limitations.

4.	All damages to which Plaintiff is entitled under Massachusetts or federal law.

5.	Statutory trebling of damages, pursuant to Massachusetts law.

6. Liquidated damages, pursuant to federal law.

7. Attorney fees, costs, and interest as allowed by law.

8. Such other and further relief as the Court may deem proper and just.

        DJAMEL OUADANI, on behalf of himself and all others similarly situated,

        By his attorneys,

        /s/ Stephen Churchill
        Stephen Churchill, BBO#564158
        Hillary Schwab, BBO#666029
        Rachel Smit, BBO#688294
        FAIR WORK, P.C.
        192 South Street, Suite 450
        Boston, MA 02111
        617-607-3260
        steve@fairworklaw.com,
        hillary@fairworklaw.com,
        rachel@fairworklaw.com

Dated: October 11, 2016